No. 26-5488

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

STEPHANIE LYNNE BROWN,

*Appellant,*

v.

WASHINGTON INTERSCHOLASTIC ACTIVITIES ASSOCIATION; et al.

*Appellees.*

On Appeal from the United States District Court for the
Western District of Washington
No. 3:26-cv-05616-DGE

**BRIEF OF IOWA AND 23 STATES SUPPORTING APPELLANT'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL**

BRENNA BIRD
Attorney General of Iowa

ERIC WESSAN
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

September 4, 2026

*Counsel for Amicus State of Iowa*
*(Additional counsel listed after signature block)*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ i
TABLE OF AUTHORITIES ........ ii
STATEMENT OF AMICUS CURIAE ........ 1
SUMMARY OF ARGUMENT ........ **Error! Bookmark not defined.**
ARGUMENT ........ 5
I. Title IX Prohibits Discrimination Based on Biological Sex and Requires Equal Opportunities for Both Sexes. ........ 5
II. Allowing Boys to Participate in Girls' Sports Denies Girls Title IX's Protections. ........ 9
CONCLUSION ........ 14
ADDITIONAL COUNSEL ........ 15
CERTIFICATE OF COMPLIANCE ........ 16
CERTIFICATE OF SERVICE ........ 16

# TABLE OF AUTHORITIES

Cases

*Adams v. Sch. Bd. of St. Johns Cnty.*,
57 F.4th 791 (11th Cir. 2022) ........ 7
*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020) ........ 6, 7
*Clark v. Ariz. Interscholastic Ass'n*,
695 F.2d 1126 (9th Cir. 1982) ........ 11
*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
545 U.S. 546 (2005) ........ 7
*Frontiero v. Richardson*,
411 U.S. 677 (1973) ........ 7, 9
*Mansourian v. Regents of the Univ. of Cal.*,
594 F.3d 1095 (9th Cir. 2010) ........ 11
*McCormick v. Sch. Dist. of Mamaroneck*,
370 F.3d 275 (2d Cir. 2004) ........ 11, 12
*O'Connor v. Bd. of Ed. of Sch. Dist. 23*,
449 U.S. 1301 (1980) ........ 11
*W. Virginia v. BPJ*,
146 S. Ct. 2356 (2026) ........ 1, 2, 4, 6, 10, 13
*Wis. Cent. Ltd. v. United States*,
585 U.S. 274 (2018) ........ 7

Statutes

20 U.S.C. § 1681 ........ 1, 5, 6, 8, 10
Iowa Code §§ 261I.1 ........ 1
Wash. Rev. Code § 28A.642.080(3) ........ 2

Regulations

34 C.F.R. § 106.41(b) ........ 13, 14

## STATEMENT OF AMICUS CURIAE

States around the country—and in this circuit—have enacted laws that protect women's sports and limit participation in those sports to biological women. *See*, *e.g.*, Iowa Code §§ 261I.1–.2. Indeed, two states with such a law just saw vindication after litigation to the U.S. Supreme Court. *See W. Virginia v. BPJ*, 146 S.Ct. 2356, 2370 (2026). But Washington has taken the opposite tack and mandated that women's sports accommodate biological men. That approach flouts Title IX's protections for women athletes.

Indeed, "women and girls should be allowed to compete for those life-changing opportunities on an equal playing field, without fear of physical injury from biological males or being forced to compete against biological males." *BPJ*, 146 S.Ct. at 2381. And Title IX is clear: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX protects biological sex—and thus, biological women are entitled to Title IX's

protections and obligations of equal treatment, benefits, and opportunities that their biological male counterparts experience.

Here, Title IX ensures female athletes receive the benefits of athletic competition and the corollary opportunities—like team building, comradery, and avenues to higher education. *See BPJ*, 146 S.Ct. at 2381.

Washington's Legislature amended its laws in 2019 to develop a "model transgender student policy" and to "eliminate discrimination in Washington public schools on the basis of gender identity and expression." Dkt. 58 at 4–5 (quoting Wash. Rev. Code § 28A.642.080(3)). Along similar lines, the Washington Interscholastic Activities Association adopted Rule 18.16.0 "Gender Identity Participation" which requires that all students be allowed to participate in its athletics programming "in a manner that is consistent with their gender identity." *Id.* (quoting WIAA Rule 18.16.0). That bylaw follows Washington law but ignores biological sex. And it violates Title IX's protections of equal treatment, benefits, and opportunities for female athletes.

Yet the district court refused to enjoin enforcement of the challenged bylaw. Dkt. 58 at 62. Absent a preliminary injunction, female athletes will be stripped of Title IX's protections and forced to compete

against biological men. For K.M.K., that harm has already materialized as an alleged sexual assault. *Id.* at 6–7.

And failing to enjoin enforcement of the challenged policies, laws, and bylaws also risks causing irreparable harm to the student-athletes. Some students will be unable to participate in sports in high school going forward. And some will face similar physical and psychological repercussions to those alleged here. Only an injunction can ensure accolades are allocated as Title IX requires—and that other female athletes are not injured by men when competing. That irreparable harm—not to mention Appellant's likelihood of success on the merits—necessitates an injunction pending appeal here.

Allowing biological males to participate in female sports denies girls Title IX's protections. There are physiological differences between biological males and females that are obvious in sports and sports performance. Those differences have been long understood to justify separate-sex teams to ensure fair and safe competition for females. *See*, *e.g.*, Press Release, *U.S. Department of Education and U.S. Department of Health and Human Services Find that Minnesota Violated Title IX*, U.S. Dep't of Educ., (Sept. 30, 2025), https://perma.cc/G8UZ-EFSH.

Across the United States, States have enacted laws that protect women, rather than put young women at risk. And that approach is consistent now with what the Supreme Court has required. *See BPJ*, 146 S.Ct. at 2381.

This Court should recognize Title IX's protections by barring biological males from competing on female sports teams. The challenged Washington laws and policies violate Title IX, a federal civil rights statute, and harm both biological sexes. States have an interest in ensuring that other States do not violate Title IX because such violations compromise the consistent enforcement of federal protections. That is why the undersigned 19 States Attorneys General support a preliminary injunction.

Twenty-seven States limit girls' athletics to biological females. *B.P.J.*, 146 S.Ct. at 2362. Amici States administer Title IX–funded programs and must know what the statute requires of them. A rule that Title IX simultaneously permits amici's laws and permits Washington's opposite command leaves recipients in every State guessing at the terms of the same federal conditions.

## ARGUMENT

### I. Title IX Prohibits Discrimination Based on Biological Sex and Requires Equal Opportunities for Both Sexes.

Congress enacted Title IX to guarantee that women would no longer be denied educational opportunities because of their biological sex. *See* 118 Cong. Rec. 5803 (1972) (Senator Bayh stating that "[t]he only antidote" to the "corrosive and unjustified discrimination against women," "is a comprehensive amendment such as the one now before the Senate.").

Its plain text forbids discrimination "on the basis of sex." 20 U.S.C. § 1681(a). Congress's aim in 1972 was unequivocal: To ensure that female students could learn, compete, and thrive on equal footing with their male peers. *See* 20 U.S.C. § 1681(a); 118 Cong. Rec. 5803 (1972). The statute's protections thus hinge on the biological distinction between men and women. Reading Title IX to erase or blur that line would not advance its purpose; it would undo it, stripping women of the very protections the statute was designed to secure.

The district court read *B.P.J.* to leave that question wide open. But that is a misread. *B.P.J.* reserved only the *ultimate* question whether Title IX forbids inclusive policies. 146 S.Ct. at 2367 n.1. "The term 'sex'

in the 1972 Title IX statute, the 1974 Javits Amendment, and the 1975 Title IX regulations cannot plausibly be interpreted to refer to anything other than biological sex." *Id.* at 2371. Congress "allowed separate sports teams precisely because of the biological differences between the sexes." *Id.* And *Bostock* is "not relevant in this very different statutory and factual context." *Id.* at 2373 (citing *Bostock v. Clayton Cnty.*, 590 U.S. 644, 662 (2020)).

A reserved question is not a blank slate. Once "sex" means biology and separate teams exist because of biology, a rule that opens a girls' team to males on grounds "unrelated to sex," Dkt. 58 at 3, cannot be squared with the statute Congress wrote.

1. Title IX's scope turns in part on the meaning of "sex." Indeed, the scope of Title IX is understood by examining its "text in light of context, structure, and related statutory provisions." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005). And "it's a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary, contemporary, common meaning at the time Congress enacted the statute." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018) (cleaned up).

In 1972, when Congress enacted Title IX, the ordinary meaning of "sex" meant the biological distinction between males and females. *See Frontiero v. Richardson*, 411 U.S. 677, 686 (1973) (plurality op.) ("[S]ex, like race and national origin, is an immutable characteristic determined solely by the accident of birth."). Dictionary definitions from the time of Title IX's enactment show that "when Congress prohibited discrimination on the basis of 'sex' in education, it meant biological sex." *Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 812 (11th Cir. 2022) (en banc); *see also Bostock*, 590 U.S. at 686 (Alito, J., dissenting) (examining dictionary definitions of "sex" prior to Title IX and finding that the "primary definition in every one of them refers to the division of living things into two groups, male and female, based on biology.").

Congress's use of "sex" throughout Title IX confirms that binary understanding based on biology. Indeed, binary distinctions are made many times throughout that section. *See* 20 U.S.C. § 1681(a)(8) (discussing "father-son or mother-daughter activities at an educational institution" and "if such activities are provided for students of one sex, opportunities for reasonably comparable activities shall be provided for students of the other sex."); 20 U.S.C. § 1681(a)(5) (discussing admitting

"only students of one sex" at public universities); 20 U.S.C. § 1681(a)(6)(B) (discussing youth service organizations that have in the past "limited to persons of one sex"); 20 U.S.C. § 1681(a)(7) (applying to "Boy or Girl conferences"); 20 U.S.C. § 1681(b) (referencing "disparate treatment to the members of one sex"). Those references to "one sex" can only be understood as acknowledging the binary nature of biological sex as female or male.

Read in context, every part of Title IX and the meaning of the words in the statute at the time of enactment confirms that "sex" unambiguously refers to biological distinctions between males and females—the very basis on which Congress sought to secure equal opportunities for women.

2. The history and purpose of the adoption of Title IX also supports that "sex" means biological sex. Again, Congress created Title IX to protect women from discrimination in the realm of education. *See* 118 Cong. Rec. 5803 (1972). Congress wanted to "guarantee that women, too, enjoy the educational opportunity every American deserves." 117 Cong. Rec. 32,476 (1971) (statement of Sen. Bayh); *see also Frontiero*, 411 U.S. at 684 (noting that "[t]here can be no doubt that our Nation has had a

long and unfortunate history of sex discrimination"). And Title IX intended to put women on an equal playing field as their male counterparts. *See* 117 Cong. Rec. 39,259 (1971) (Senator Green stating, "[a]ll that this title does is to ask that a woman be considered . . . in the same fashion as those of a male applicant."). The word "sex" understood in Title IX's historical context must mean biological sex as the purpose of Title IX was to rectify the disparate treatment of women compared to men.

The district court correctly recognized that the Supreme Court "appear[ed] to endorse the position that 'sex' in the Title IX context should be understood to mean biological sex." Dkt. 58 at 54 (quoting *BPJ*, 146 S.Ct. at 2371). Yet despite that, the district court went on to make findings contrary to that understanding. So under Title IX, a person cannot "be excluded from participation in, be denied the benefits of, or be subjected to discrimination" in certain activities based on their biological sex. 20 U.S.C. § 1681(a).

## II. Allowing Boys to Participate in Girls' Sports Denies Girls Title IX's Protections.

Laws and bylaws like those in Washington challenged here undermine what Title IX was intended to do—provide individuals equal

opportunities in education and activities and forbid differential treatment that causes harm by treating one sex better than the other.

Allowing biological men to participate in athletics "consistent with their gender identity" but opposite their biological sex denies the benefits of sports to young women. *See* WIAA Rule 18.16.0. By opening female athletic competitions to biological males, such bylaws erase the very distinction Congress recognized as essential to preserving fair and equal opportunities for women in athletics. That approach transforms a statute meant to protect women into one that disadvantages them, depriving female athletes of the level playing field Title IX guarantees.

In the sport contexts, courts have long recognized that "Title IX requires that schools provide equal athletic opportunity to boys and girls." *McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 296 (2d Cir. 2004). Courts understand that ensuring equal opportunity will sometimes require maintaining female-only athletic teams. *See, e.g.*, *O'Connor v. Bd. of Ed. of Sch. Dist. 23*, 449 U.S. 1301, 1307 (1980) (Stevens, J., in chambers). Title IX "is widely recognized as the source of a vast expansion of athletic opportunities for women in the nation's schools and universities." *Mansourian v. Regents of the Univ. of Cal.*, 594

F.3d 1095, 1099 (9th Cir. 2010). And "there is clearly a substantial relationship between the exclusion of males from [a sports] team and [Title IX's] goal of redressing past discrimination and providing equal opportunities for women." *Clark v. Ariz. Interscholastic Ass'n*, 695 F.2d 1126, 1131 (9th Cir. 1982).

Title IX gives women the opportunity to compete in sports and experience the benefits that come with being part of a team. But rules and laws like Washington's, which allows biological males to compete against women because they "identify" as female, put that hard-won opportunity at risk.

There are physiological differences between the sexes, specifically physiological advantages that males have over females. One study found,

> there is a clear sex difference in both muscle mass and strength even adjusting for sex differences in height and weight. On average, women have 50% to 60% of men's upper arm muscle cross-sectional area and 65% to 70% of men's thigh muscle cross-sectional area, and women have 50% to 60% of men's upper limb strength and 60% to 80% of men's leg strength.

David J. Handelsman et al., *Circulating Testosterone as the Hormonal Basis of Sex Differences in Athletic Performance*, 39(5) Endocrine Reviews 803, 812 (2018). Data shows that "[b]iological males as a group

outperform biological females in athletic events dependent on strength, speed, power, and endurance." Michael J. Joyner et al., *Evidence on Sex Differences in Sports Performance*, 138 J. Applied Physiology 274, 275 (2024). And prepubescent boys also have physiological differences that lead them to perform better than their female counterparts. *See id.* at 275–76.

One only need look at the facts of this case to understand how these physiological differences affect sports. The female wrestler here was "ranked first for her weight class on the junior varsity girls' wrestling team" when she competed against the biological male. Dkt. 58 at 6. During the second period, the biological male "reached between" the female wrestler's legs and "digitally penetrated her vagina for several seconds causing great pain"—and, unsurprisingly, the female athlete was "horrified and shocked and felt deeply violated." *Id.* Wrestling puts its competitors in close, combat-like quarters. Allowing males to wrestle females risks repeating this type of altercation in a way that undermines the competitiveness of girls' sports.

Here, the district court explained that "*B.P.J.* does not identify what evidence supported" the Supreme Court's holding, "which means

the Court is unable to analyze" whether the statements about biological sex should apply here. Dkt. 58 at 38. But the district court is not free to treat the Supreme Court's construction of a federal statute as an evidentiary proposition subject to relitigation. The Supreme Court resolved how to best read Title IX. And of course, bolstering that is the fact that wrestling is an enumerated contact sport subject to even stronger need for protections for females. *See BPJ*, 146 S.Ct. at 2370 (citing 34 C.F.R. § 106.41(b)).

By maintaining sex-specific sports, women can compete on a level playing field, reap the rewards of athletic participation, and avoid the safety risks inherent in competing against physiologically distinct opponents. What Washington and the WIAA have done here, interpreting Title IX to require that schools permit male athletes to compete based on their self-proclaimed gender identity, puts girls at a disadvantage and undermines the entire purpose of Title IX. Not only does it undermine Title IX, it violates it. *See* Press Release, U.S. Dep't of Educ., *supra*.

Title IX's text, history, and purpose all make clear that its protections are grounded in distinction based on biological sex to ensure that women can compete safely and fairly in all aspects of life—including

athletics. It is essential to fulfilling Title IX's promise that females compete only against biological females in sports. To hold anything else violates Title IX's protections.

## CONCLUSION

The Court should grant Appellant's motion to enjoin Defendants from enforcing the challenged laws and policies.

September 4, 2026

Respectfully submitted,

BRENNA BIRD
Iowa Attorney General

*/s/ Eric Wessan*
ERIC WESSAN
*Solicitor General*
Hoover State Office Building
1305 East Walnut Street
Des Moines, Iowa 50319
Phone: (515) 823-9117
eric.wessan@ag.iowa.gov

*Counsel for the State of Iowa*

**ADDITIONAL COUNSEL**

Steve Marshall
Attorney General of Alabama

Cori Mills
Acting Attorney General of Alaska

Tim Griffin
Attorney General of Arkansas

James Uthmeier
Attorney General of Florida

Chris Carr
Attorney General of Georgia

Raúl R. Labrador
Attorney General of Idaho

Theodore E. Rokita
Attorney General of Indiana

Kris Kobach
Attorney General of Kansas

Liz Murrill
Attorney General of Louisiana

Lynn Fitch
Attorney General of Mississippi

Catherine Hanaway
Attorney General of Missouri

Austin Knudsen
Attorney General of Montana

Michael T. Hilgers
Attorney General of Nebraska

John Formella
Attorney General of New Hampshire

Drew Wrigley
Attorney General of North Dakota

Gentner Drummond
Attorney General of Oklahoma

Alan Wilson
Attorney General of South Carolina

Marty Jackley
Attorney General of South Dakota

Ken Paxton
Attorney General of Texas

Jonathan Skrmetti
Attorney General of Tennessee

Derek E. Brown
Attorney General of Utah

John B. McCuskey
Attorney General of West Virginia

Keith G. Kautz
Attorney General of Wyoming

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because this brief contains 2,588 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(5) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: September 4, 2026

/s/ *Eric H. Wessan*
Solicitor General

## CERTIFICATE OF SERVICE

The undersigned certifies that on the fourth day of September, 2025, this brief was electronically filed with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

/s/ *Eric H. Wessan*
Solicitor General